**SO ORDERED.**

**SIGNED this 18 day of August, 2009.**



*Dale L. Somers*
Dale L. Somers
UNITED STATES BANKRUPTCY JUDGE

_____

Designated for on-line use; not designated for print publication
IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| In Re: | |
| THOMAS L. SHORT, | CASE NO. 07-12844 |
| DEBTOR. | CHAPTER 7 |
| J. MICHAEL MORRIS, Trustee, | |
| PLAINTIFF, | |
| v. | ADV. NO. 08-5232 |
| ANTHONY GROVES, | |
| DEFENDANT. | |

**MEMORANDUM OPINION AND ORDER
DENYING TRUSTEE'S COMPLAINT FOR TURNOVER AND
GRANTING IN PART TRUSTEE'S SECTION 548 COMPLAINT**

1

In this adversary proceeding, the Chapter 7 Trustee, J. Michael Morris (hereafter Trustee) seeks to recover from Anthony Groves (hereafter Mr. Groves) unpaid rent for occupancy of one unit of Debtor Thomas Short's duplex. Trial was held on May 14, 2009. The Trustee appeared by J. Michael Morris, Klenda, Mitchell, Austerman & Zuercher, L.L.C. Defendant Mr. Groves appeared by William A. Wells, of Young, Bogle, McCausland, Wells & Blanchard, P.A. There were no other appearances. The Court has jurisdiction.[1]

**FINDINGS OF FACT.**

The trial witnesses were Debtor and Defendant Groves. Their testimony was forthright, not evasive, and consistent. Although neither understood the foreclosure and bankruptcy processes, it was clear that both parties acted with good intentions and there was absolutely no hint of fraud or other wrongful conduct in the lease transaction.

Debtor at the time of filing was the owner of a duplex located in Wichita, Kansas. Debtor resided in the back unit. Beginning in November 2006, Mr. Groves, a workplace friend of the Debtor, rented on a month to month basis the front duplex unit from Debtor for $450 per month, payable in advance. Both Debtor and Mr. Groves testified that there was a written lease, but it could not be found at the time of trial. Mr. Groves timely paid his rent and otherwise performed his duties as a tenant.

---

[1] This Court has jurisdiction over the parties and the subject matter pursuant to 28 U.S.C. §§ 157(a) and 1334(a) and (b), and the Standing Order of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective July 10, 1984. Furthermore, this Court may hear and finally adjudicate this matter because it is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(H). There is no objection to venue or jurisdiction over the parties.

The property was mortgaged to Beneficial Mortgage Bank. In about May, 2007, Debtor determined that because he was unable to continue to make the monthly mortgage payments, Beneficial would soon take back the property. After Mr. Groves made the May rent payment, Debtor informed Mr. Groves that he need not make future rent payments. Debtor reasoned that since he was not paying Beneficial, it would be unfair to require Mr. Groves to pay Debtor.

A default journal entry of judgment in a foreclosure action filed by Beneficial against Debtor was filed on October 4, 2007. The sheriff's sale was held on November 7, 2007. Debtor filed for relief under Chapter 7 on November 19, 2007. Debtor claimed the property as his homestead. The schedules list the property as having a value of $60,000, subject to a secured claim of $88,699. The evidence corroborated those amounts. Based upon the schedules, the Trustee established that Debtor was insolvent from May 2007 through the date of filing.

Debtor continued to reside in the property during the redemption period, which ran to February 2008. Mr. Groves, at the request of the Trustee, vacated the premises in early February 2008. No rent had been paid after May 3, 2007. Mr. Groves testified that he would have moved sooner if asked to do so.

**TRUSTEE'S CLAIMS.**

The Trustee, in his amended complaint, seeks to recover rent for the period June 2007 through February 7, 2008 at the rate of $450 per month. The amount sought $3,708.57, comprised of $3,600 for the period June through January, plus the pro rata amount of $108.57 for February 1 through 7. In Count I, the Trustee prays for turnover under the theory that the rent was due the Debtor pursuant to the lease and not paid. In Count II, he alleges that Debtor's

3

statement that he would not collect rent after May was a gift to Groves and a transfer of property of the estate which may be avoided as a fraudulent conveyance under 11 U.S.C. § 548(a)(1)(B).

Defendant Groves contends that he owes no rent because there was no lease after May, 2007. After that date, he contends he was a guest of the Debtor. He argues that he should have no liability to the Trustee because he did nothing wrong and would have vacated the premises earlier if he had been asked to do so.

**ANALYSIS AND CONCLUSIONS OF LAW.**

At trial, the Trustee conceded that he has no claim under a contract theory against Mr. Groves for rent owed to Debtor. He agrees that because Debtor forgave the payment of rent after May 4, 2007, the Trustee, standing in the shoes of the Debtor, has no claim against Mr. Groves for such rent. The Court agrees, and the Trustee is denied the relief he seeks under Count I.

As to Count II, the Trustee contends that each element of a fraudulent conveyance under 11 U.S.C. § 548(a)(1)(B) is present. That subsection provides:

> (a)(1) The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily--
> * * *
> (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
> (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

This subsection is the constructive fraud provision and applies to transfers by insolvent debtors even where there is no actual fraud. "It permits avoidance if the trustee can establish (1) that the

4

debtor had an interest in property; (2) that a transfer of that interest occurred within one year [now two years] of the filing of the bankruptcy petition; (3) that the debtor was insolvent at the time of the transfer or became insolvent as a result thereof; and (4) that the debtor received 'less than a reasonably equivalent value in exchange for such transfer.'"[2] In this case, the allegedly fraudulent transfer arises from Debtor's allowing Mr. Groves to occupy the duplex without paying rent from June 1, 2007 to February 7, 2008. The evidence fully satisfies elements two and three - the events occurred less than two years before Mr. Short filed for bankruptcy and Mr. Short was insolvent from May 2007 to the date of filing. The question is whether Mr. Grove's actions constitute a "transfer" for which Mr. Groves received less than a reasonably equivalent value.

Transfer is broadly defined by § 101(54) as meaning "(A) the creation of a lien; (B) the retention of title as a security interest; (C) the foreclosure of a debtor's equity of redemption; or (D) each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with-- (i) property; or (ii) an interest in property."[3] This definition was intended by Congress to be as "broad as possible."[4]

The most obvious transfer in this case is Mr. Short's renting of the duplex to Mr. Groves in November 2006. Mr. Groves received the right to occupy the duplex unit owned by the Debtor, hence Mr. Short's occupancy interest was transferred to Mr. Groves. However there is no suggestion that the lease initially was for less than a reasonably equivalent value - monthly

---

[2] *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 535 (1994).

[3] 11 U.S.C. § 101(54).

[4] S. Rep. No. 95-989, 95th Cong. 2d Sess. 27 (1978).

5

rent of $450 paid in advance. As a basis for recovery under § 548(a)(1)(B) the Trustee therefore focuses on later events, staring in May, 2007, where the application of the definition of transfer is not as straight forward. When Debtor informed Mr. Groves in May, 2007 that no more rent would be required, the occupancy was not terminated, and Mr. Groves continued to reside in the duplex with Debtor's consent. This event either resulted in the continuation of the lease with a reduction in rent or the termination of the lease with continued occupancy, in which case under Kansas law a month to month tenancy was created.[5] In either event, the transfer of the occupancy, initially made in November 2006, was not terminated. The primary change was the consideration for the occupancy. The question is whether, as contended by the Trustee, this change was a transfer for less that adequate consideration within the meaning of § 548(a)(1)(B).

The Court finds that there was a transfer for no consideration. The definition of transfer was intended to be as broad as possible. "The hallmark of a 'transfer' is a change in the rights of the transferor with respect to the property after the transfer."[6] The termination of a debtor's executory contract is a transfer.[7] Reduction of the amount due to debtor on commercial promissory notes is a transfer.[8] In this case, staring in June 2007 there was a change in the rights of the Debtor under the lease with respect to Mr. Groves' occupancy of a portion of Debtor's real

---

[5] K.S.A. 58-2570 (c); K.S.A. 58-2545.

[6] *Barber v. Dunbar (In re Dunbar)*, 313 B.R. 430, 435 (Bankr. C.D. Ill. 2004).

[7] *Metro Water and Coffee Services, Inc. v. Rochester Community Baseball, Inc. (In re Metro Water and Coffee Services, Inc.)*, 157 B.R. 742 (Bankr. W.D.N.Y. 1993) (holding termination of debtor's concession services contract with baseball team was a transfer for purposes of § 548).

[8]. *Grochocinski v. Reliant Interactive Media Corp. (In re General Search.com)*, 322 B.R. 836, (Bankr. N.D. Ill. 2005).

6

property. Before June 2007 Debtor was entitled to $450 per month for the occupancy; after June 2007 he had no right to payment since he told Mr. Groves that no future payments were required.

There is no doubt that the Debtor did not receive reasonably equivalent value for the transfer. Each month or day Mr. Groves remained in possession after June 1, Debtor was deprived of income from the property, while Mr. Groves gave up nothing of value. He in essence received a gift of use of the duplex. In this case, there is no way to assign a value to the transfer on its initial date, June 1, 2007, as the rent forgiveness was not for a specified period of time. In essence there was a separate transfer each day the occupancy continued. However, by definition a fraudulent transfer is a prepetition event. Subsection 548(a)(1) requires that the transfer be made within two years *before* the date of filing. Therefore, there can be no fraudulent transfer after the date of filing on November 19, 2007.

The Court therefore finds that there was an implied fraudulent transfer starting in June 2007 when Debtor terminated his right to receive rent for the occupancy of the duplex. Each day the occupancy continued without the payment of rent was in essence a separate implied fraudulent transfer. The Trustee is therefore entitled to avoid the transfers for the period June 1, 2007 through November 19, 2007.

As a remedy, the Trustee seeks a judgment against Mr. Groves under § 550(a)(1) which provides that "to the extent that a transfer is avoided under section . . . 548 . . ., the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from . . . the initial transferee of such transfer or the entity for whose benefit such transfer was made." The Court agrees that in this case recovery of the value of the property is appropriate and $450 per month is an appropriate value, since no evidence was presented that

7

this rate, which was agreed upon by the parties, was not a reasonable rent for the duplex. The Court also agrees that Mr. Groves is both the initial transferee and the person for whose benefit the transfers were made. The Trustee is therefore entitled to a judgment against Mr. Groves for rent at the rate of $450 per month for the period June 1, 2007 through November 19, 2007, in the amount of $2535.[9]

The Court is sympathetic to Mr. Groves's arguments that it is not fair for the Trustee to recover, that there was a mutual agreement to change the terms of the lease or terminate the lease, and the Trustee should have nothing to do with the transaction. The Court agrees that entry of judgment against Mr. Groves is not in accord with a common understanding of landlord tenant relationship and finds application of the Code distasteful when applied to this noncommercial, well intentioned transaction between two friends. The Court finds in favor of the Trustee only because the Bankruptcy Code leaves no alternative. Congress has made the policy decision that the value of transfers made by a debtor within the two years before filing for bankruptcy protection should be returned to the bankruptcy estate for the benefit of the debtor's creditors if the debtor did not receive reasonably equivalent value, even if there is no fraud or wrongdoing. The fact pattern of this case fits what Congress intended.

In conclusion, the Court denies Count I of the complaint for turnover; grants Count II of the Complaint for fraudulent transfer under § 548(a)(1)(B) as to the forgiveness of rent for the period June 1, 2007 through November 19, 2007 and rules that the Trustee is entitled to a

---

[9] The amount is calculated as follows. $450 per month for five months (June through October), plus 19/30 times $450 for the nineteen days in November 2007.
8

judgment for $2535 against Defendant Groves; and denies Count II of the Complaint as to the value of the rent not paid postpetition.

The foregoing constitute Findings of Fact and Conclusions of Law under Rule 7052 of the Federal Rules of Bankruptcy Procedure which makes Rule 52(a) of the Federal Rules of Civil Procedure applicable to this matter. A judgment based upon this ruling will be entered on a separate document as required by Federal Rule of Bankruptcy Procedure 9021 and Federal Rule of Civil Procedure 58.

**IT IS SO ORDERED.**

###